UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-132-FDW

| | |
|---|---|
| STEPHEN ANTWAYN BEST-EL BEY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>)<br>E. PAUL, Mailroom Staff, et al., )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed pursuant to 42 U.S.C. § 1983, (Doc. No. 1), and on Plaintiff's Motion to Appoint Counsel, (Doc. No. 5). 28 U.S.C. §§ 1915(e)(2), 1915A. The Court has granted Plaintiff's application to proceed in forma pauperis. See (Doc. No. 7).

**I.    BACKGROUND**

Pro se Plaintiff Stephen Antwayn Best-El Bey is a North Carolina state court prisoner currently incarcerated at Lanesboro Correctional Institution in Polkton, North Carolina. Plaintiff filed this action on March 26, 2014, pursuant to 42 U.S.C. § 1983. Plaintiff has named as Defendants E. Paul, identified as Mailroom Staff at Lanesboro; W.T. Hargrave, identified as Administrator of Lanesboro; L.M. Sutton, identified as a member of the Correspondence Review Board, which denied Plaintiff's appeal of the denial of Plaintiff's grievance related to this action; and G.T. Solomon, identified as the Director of Prisons for the State of North Carolina.

In the Complaint, Plaintiff alleges that Defendants violated his First Amendment right to access to the courts and his First Amendment right to freedom of speech and expression of

1

religion by confiscating certain documents sent to him from his sister. Specifically, Plaintiff alleges that on January 3, 2014, Defendant Paul worked inside of the mailroom at Lanesboro when she withheld some of Plaintiff's incoming mail. Plaintiff alleges that he had sent seven pages of "Nationality Papers" to his sister "to be typed up and to be sent back to me, so that I can proceed with my case in court as proof of the courts not having jurisdiction over me." (Id. at 21). Plaintiff alleges that the documents pertained to his legal rights as a member of the Moorish Science Temple of America. Plaintiff alleges the Nationality Papers that were confiscated "derived from the religious beliefs of the M.S.T.A.'s By-Laws and Constitution." (Doc. No. 1 at 6). Plaintiff alleges that Defendants have failed to show how

> the language/contents expressed within the censored/withheld correspondence (Proclamation/Declaration of Nationality papers) from his (Plaintiff) sister, which derived from Plaintiff's religious belief in the M.S.T.A.'s By-Laws and Constitution (of the U.S. Moorish American Nation) and civic practices, were validly connected between the alleged penological interest in 'security' that was 'necessary to maintain the control' of Lanesboro C.I., to legally justify Defendant Paul's unlawful censorship on 1-3-14, . . . causing Plaintiff not to be able to publicly 'change his nationality' and/or 'depriving him of his (true) nationality' as a human being.

(Id. at 10) (internal quotation marks in original).

Plaintiff filed a grievance challenging the withholding of his incoming mail, but the grievance was denied on the ground that the withheld documents were not allowed because Plaintiff is classified as a member of a Security Threat Group, and the documents were considered Security Threat Group materials. Plaintiff appealed the grievance response, but the decision was upheld on appeal. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (Id. at 17-20).

**II.     STANDARD OF REVIEW**

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint

to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III. DISCUSSION**

While prisoners and detainees have some First Amendment rights in both receiving and sending mail, prison officials may place reasonable restrictions on these rights. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989). Prison regulations and practices relating to the regulation of incoming mail are analyzed under a reasonableness standard as set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Under that standard, a prison action is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. In determining the reasonableness of a restraint on an inmate's right to receive mail, courts must consider the following factors: (1) whether there is a valid, rational connection between the action and the stated legitimate

3

government interest; (2) whether there are alternative means of exercising the right; (3) whether accommodation of the right will have an adverse impact on guards, other inmates, and prison resources generally; and (4) the absence of ready alternatives. Id. at 89-90. Applying these four factors, Plaintiff fails to state a claim for a violation of his First Amendment right to practice his religion or his right to free speech. Even assuming Plaintiff's factual allegations are true, the withholding of the documents at issue does not impede Plaintiff's right to worship according to his religion, nor does it prohibit him from speech to which he is entitled. Indeed, by Plaintiff's own allegations, the confiscated documents were intended to be used to change his nationality so that he could challenge his state court conviction, not as a means to worship according to his religion. In support of his First Amendment claim, Plaintiff argues that

> I follow the religion of Prophet noble Drew Ali, known as Moorish-Science Temple of America. (MSTA). Prophet Noble Drew Ali teaches us our Birth-rights and Divine Creed MSTA is recognized in and outside of the United States of American, and approved by this State's Government's DPS as a practicable religion within many of its facilities and institutions. MSTA [poses] no threat to NCDPS by its followers proclaiming their Nationality. The law aspect of MSTA isn't something that Prison Legal Services handle on our behalf, and I don't have to receive any State approval to handle my legal affairs or to proclaim my Nationality.

(Id. at 23). Plaintiff alleges that Defendants' "attempt to keep me denationalized through a policy that conflicts with my religion and denies me access to the courts to present my case, without any proof of a security interest isn't right. Furthermore, totally withholding correspondence from my sister, without any proof of a security interest isn't right either. I am Stephen Antwayn Best-El Bey, in propria persona with sui juris status, indigenous sovereign of Moorish descent. I am not a colored person, African-American, Black, or Negro, and I am entitled to proclaim my true Nationality while I am incarcerated." (Id. at 24). Moreover, in his grievance, Plaintiff stated: "I sent these nationality papers to my sister to be typed up and to be

4

sent back to me, so that I can proceed with my case in court as proof of the courts not having jurisdiction over me." (Id. at 21). In response to Plaintiff's grievance, officials wrote that

> any outgoing mail of yours that would have contained papers with requests for declaration of nationality would have been refused and deemed contraband, had they been seen. The paperwork that your sister attempted to send to you is not a representation of the Moorish Science Temple of America, but in fact a representation of the Moorish American Sovereign Citizen Movement and thus a clear direct violation of NCDPS policy and procedures. The NCDPS has identified the MSTA as a Religious affiliation and by right you are eligible as a member to practice any affiliated rituals, teachings and methods that are presented within the guidelines established by the policy and procedures set in place. The information that your sister attempted to send in including various statements that you have made inside our grievance clearly identify your alignment with the Moorish American Sovereign Citizen Movement which has been identified as a separate entity [from] the MSTA and a direct threat to the safety and security of all facilities.

(Id. at 33).

Although Plaintiff has the right to free expression, this right must be balanced against prison officials' right to maintain security and prevent violence. See Pell v. Procunier, 417 U.S. 817, 827 (1974) (stating that the judgment of correctional officials in security matters is "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."). By Plaintiff's own allegations, the purpose of the Nationality Papers was to declare that, as a Moorish American, he was not subject to the laws of the State of North Carolina, and his state court conviction is, therefore, invalid. The statements in the confiscated documents are the same statements often made by persons in the Sovereign Citizen movement. As one court has explained, these persons purport to be outside the jurisdiction of the courts, and they use documents such as those confiscated from Plaintiff to harass the courts with various tactics,

5

including numerous frivolous filings, sometimes referred to as "paper terrorism." See Colar v. Heyns, No. 1:12-cv-1269, 2013 WL 141138, at *3 (W.D. Mich. Jan. 11, 2013) ("The 'sovereign citizen movement' is well documented. The Federal Bureau of Investigation has classified 'sovereign citizens' as domestic terror threats because they are anti-government extremists."); Minister Truth Ali ex rel. Williams v. New Jersey, Civ. A. No. 12-2797, 2012 WL 4959488, at *4 (D.N.J. Oct. 17, 2012) (discussing the sovereign citizen movement); Folson-El Bey v. Wells Fargo Home Mortgage, No. 11-cv-13534, 2012 WL 1453569, at *1-3 (E.D. Mich. Apr. 26, 2012) (same); El Ameen Bey v. Stumpf, 825 F. Supp. 2d 537, 539-43 (D.N.J. 2011) (discussing the overlap between the Moorish American and sovereign citizen movements). Here, there is a rational connection between the North Carolina Department of Public Safety's regulations and the objective of prohibiting certain mail associated with Security Threat Groups from entering or leaving the state's prisons. Given that Plaintiff has been classified as belonging to a Security Threat Group, the prison has a legitimate penological interest in restricting the possession of the type of documentation that was confiscated from Plaintiff in this case.

Plaintiff also fails to state a claim for a violation of his First Amendment right to access to the courts. In Bounds v. Smith, the Supreme Court held that the right of access to courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such

6

as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353). Here, a claim by Plaintiff that he is not subject to the laws of the States or of the United States by virtue of his citizenship as a Moorish American would be patently frivolous. Thus, Plaintiff does not allege facts showing that "a nonfrivolous legal claim has been frustrated or was being impeded." Lewis v. Casey, 518 U.S. at 353. In sum, Plaintiff has failed to state a claim for a violation of his First Amendment right to access to the courts.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Complaint is **DISMISSED** for failure to state a claim.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED** for failure to state a claim.
2. Plaintiff's Motion to Appoint Counsel, (Doc. No. 5), is **DENIED** as moot.
3. The Clerk is directed to terminate this action.

Signed: July 30, 2014

Frank D. Whitney
Chief United States District Judge